We'll hear argument next this morning in Case 17-571, Fourth Estate Public Benefit Corporation v. Wall-Street.com. Mr. Panner. Mr. Chief Justice, may it please the Court, the Copyright Act provides strong textual evidence that the phrase, registration has been made in Section 411a, refers to the copyright owner's compliance with the registration requirement of Section 408a. That reading is confirmed by the legislative history, the statute overruled cases that made the register a gatekeeper to the courthouse, and the policy of the statute, which grants exclusive rights upon fixation of an original work, not by virtue of any administrative action. And as a matter of ordinary language, and in the Copyright Act's lexicon, registration can refer to the copyright owner's effort to secure recordation of a claim, and to the Copyright Office's recordation of the claim after examination. Well, but as to that, it seems to me, one reason the case is a little confusing is that I think you're right. Registration could mean either. But in a situation where you've got a registrar, it seems to me that the most likely understanding of registration is what that person does. But, Your Honor, that's not the way the statute uses the language. And in Section 411c, the – Section 411c expressly says the copyright owner makes registration. In Section 4122, there's agreement that when it says registration is made, it's referring to the action of the copyright owner. In Section 408c, it refers to registration has been made in a context that necessarily refers to the action of the copyright owner. It says that registration may be made upon the filing of a single application and fee. In Section 405a, it refers to registration for the work has been made within 5 years, which, again, strongly suggests that it's by the copyright owner. In Section 405b, again, registration for the work has been made under Section 408. So there's no question, I think of – Roberts. Well, but you forgot the second sentence of 411a, which speaks of registration cannot mean when the applicant applies, because it talks about the applicant being able to take action when registration has been refused. Or I would say when registration has not been made. Well, Your Honor, I wouldn't say when registration has not been made. It's when registration has been refused. And that language is important. And I think it's important to stress that our position is that registration refers flexibly to both, but that the phrase registration has been made consistently refers to the action of the copyright owner. And it makes sense in Section 411a itself. And if you look at the parallelism in the structure, it talks about registration having been made in accordance with the title, and then it says if the required deposit fee and application have been delivered, so again, the action of the copyright owner, but registration has been refused, i.e., the registrar has taken an action that calls into question whether the registration has been made in accordance with the title, the case can still proceed. And so you just dismiss 410d as superfluous? Not at all. Section 410d provides that the effective date of registration is when the application fee and deposit have been received in a form that is acceptable for registration as later determined, and this is key, by the office or by a court. So Section 410d, I think, strongly supports our position, because it makes clear that in a case where there may be a doubt about perhaps because the registrar has not yet acted, if there's some question about whether registration has been made in accordance with the title, the court can determine that question, can also determine that question in a case where it's not. But you've already said registration has been made in terms of the registrar's action when the applicant applies. Not to be clear, Your Honor, registration has been made in the statute refers to the copyright owner's compliance with Section 408a, which says that registration may be obtained upon the submission of the required application deposit fee. Can you drive without a driver's license when yours has expired because you wrote in to the registry of motor vehicles, but they haven't yet licensed you? Well, Your Honor. Can you change your sewer in the house with a man who has not gotten the approval from the local public health authority under a statute that says you have to have a registered you have to have an approved plumber because he wrote in and asked for one? I mean, I can't think of examples, I'm trying to, where there's something roughly comparable and the statute is interpreted the way you want. Maybe you've been able to think of some, but you probably have. Well, I think that, Your Honor, there's a couple of cases, there's a couple of statutes that were cited in the amicus brief of the music publishers that refer to the fact that registration is upon the, that registration is made when the applicant applies. They say that specifically. But, Your Honor, the point here is that the text of the statute likewise makes clear that registration is made upon the submission of the materials. And we gave the analogy to a college student who registers for a class. One would say that he has made his registration, he's registered for the class. But nevertheless, the registrar might say the class is full, you're not going to be admitted to it, and now the registration has been refused. And this Court has repeatedly referred to the fact that a copyright owner makes registration. In the case of the class, when you've mailed it in, but the professor hasn't gotten it. Well, Your Honor, this, in this statute, it says that registration is made if, and this is in Section 410d, it answers the question. It says when they've been received by the copyright office. So the question about whether it's a mailbox rule or received by the copyright office is actually addressed in the statute. But again, the term registration has that flexibility built into it. And I think it's important to understand the context in which Congress was acting when it adopted Section 411a in 1976. It was aware of the Vacheron decision, and it was aware of Chief Judge Clark's dissent in which he made this very point, which is that it doesn't make sense to read registration as requiring affirmative administrative action when the rights that exist, the exclusive right, does not depend, it's not like the patent office, it's not a situation in which the administrative body has the authority to grant exclusive rights, and that the exclusive rights don't exist until there's that action. Could you tell me, as a matter of fact, when is the copyright registration published? Copyright, under current, under the current procedure, the copyright application becomes publicly available when it's, after it's granted. Sotomayor, and so it seems illogical to think that you're going to get rights against the third party who's not on notice that your copyright has been registered because it's not public. It is not. I just want to, I want to address that as strongly as I can. It's just not right. The right to exclude exists by virtue of the creation of an original work and its fixation in a medium from which it can be perceived. That gives the author the right, the copyright owner, the right to exclude. There's no question about that. That has nothing to do with notice. Notice is not required under the current statute. But it is in terms of, well, that begs the question. You can't pursue a suit unless the registration is accepted. No, no, Your Honor. Section 4, in fact, there's no question that you can pursue suit whether or not the registration is accepted. Under Section 4. Yes, you're right, because the fixation is. And the other thing that's important to understand, and this is, I think, critical. The government concedes that the enhanced statutory remedies that are available for infringement after a work has been registered are available if the registration, the application, deposit and fee have been submitted. If the applicant has made registration, that is enough to satisfy 412-2. And they say that that's true because the effective date of registration is the date on which those Section 408A has been applied. Well, that's enough, assuming that the registrar has registered the mark. It's just a question of whether you go back to start counting the damages. Again, the registrar does not have to register the mark, not the mark, the copyright. Well, you're not entitled to the special benefits under the Act until the registrar has, right? No. It just goes back in terms of when you start calculating, it may go back. No, Your Honor. Section 410D. So you could go back, the registrar hasn't even registered the mark, and you can go into court and say, hey, I get the benefits of having registered my mark? It's the copyright claim, yes, Your Honor. That's what Section 410D says. Section 410D says the effective date of registration is the date on which the required application, deposit and fee have been received in a form acceptable for registration. Maybe I'm just missing the point. One of us. I mean, you have to at least have it registered, accepted by the registrar. Otherwise, how do you know that you're entitled to those benefits? Your Honor, because the question of registrability can be determined by a court in that litigation. That's what Section 410D says. And again, in the vast majority, as a practical matter, in the vast majority of cases, registration is essentially a ministerial question of submission of the application, deposit and fee. Think about if you have a magazine article or a book or a piece of music, you know, a piece of sheet music that is being registered. Those things are submitted. They are registered as a matter, of course, under current procedures, it can take many months, but it's going to be registered as a matter of course. And again, the right to exclude. Everybody agrees, Your Honor, that when those materials are submitted in a form acceptable for registration, that is the effective date of registration, even if the register acts a year later. And so precisely that's just 410D that says that. But everybody agrees that that's what 4122, which refers to, which preserves certain statutory remedies if registration is made within three months after publication. That's what everyone agrees that that's what 4122 means as well. It's clearly what section 411C, which for what it's worth was adopted as section 411B immediately after 411A. Everybody agrees that the Government agrees that that's what section 411C means. And so I do think that what, that when you're thinking about what has to happen, the Copyright Office is not the Patent Office. It does not grant exclusive rights that don't exist before the Copyright Office acts. The exclusive rights exist. There is a requirement to register. The copyright owner has to register before suing. But there's no requirement, and the statute doesn't say, that the Copyright Office has to act first, and there's no reason that it should. It's a, again, the right to exclude in the statute is built around the fact that an author has fixed an expression in a tangible medium. And once they have submitted the required application, deposit and fee under section 408A, they have registered. They have taken care of that procedural hurdle so that they can then bring their lawsuit and get relief. Now, in many cases, the Copyright Office may grant the registration while that is pending. And, but in any event, if there's a question about that, it can be dealt with. As a practical matter, that's almost never going to happen. And that's very important to recognize, is that if the Court rules, if the Court affirms the Eleventh Circuit, it will create major problems for copyright owners. That's why the copyright community has unanimously come in to say that this Court should not. Kagan. I understand some of the policy arguments that you have on your side, but, I mean, the question is whether the text can be looked at that way. And I'll just go back to where the Chief Justice started, which is this passage in 411A. And you have these two sentences, and the first sentence is, registration has been made, and the second sentence is, registration has been refused. And they're connected by a however. So, you know, to me, you have these two sentences. They're in total proximity. They're both framed in the passive voice. Registration has been refused is clearly registration has been refused by the register, not by the holder. And so it seems, you know, the only way to read this is that the registration has been made is by the register, too. Well, Your Honor, obviously we don't agree with that. And let me try to say why I think, again, getting back to the textual evidence from the statute, the issue is not granted or refused, and the issue is whether registration is made by the copyright owner. And the text uses the phrase to mean that all the time, including in the immediate succeeding in question. Well, I'm kind of with you that the word register has some flexibility to it. So you've got you've convinced me of that. The question is whether it has flexibility to it in 411A. And given the juxtaposition between the first sentence and the second sentence, the identical grammar, the way they're connected with the however, it would just seem extremely strange to change the person who's the subject of this action. I don't think so, Your Honor. And bear with me. If you look at the structure of the sentence, the first sentence says if registration has been made in accordance with this title. And as we've shown, that phraseology, the registration has been made, construction is used all the time to refer to what the copyright owner does. The next sentence says where the deposit application and fee required for registration have been delivered. Again, the action of the copyright owner. So that is parallel to the beginning of that first sentence. Then the second, the second piece of it says in accordance with the title. And this one then says in the proper form and registration has been refused. So this is distinguishing a situation where registration has been made and it is or going to be granted because the registrar agreed. But this is a situation in which the registrar, notwithstanding the compliance with Section 408A, has refused it. And that, so the reference to the registration has been refused corresponds to the question of, is intended to clarify the question of what happens if there's a dispute because the registrar has refused the application, refused to register the claim, about whether it's in accordance with this title. And so, and if you look at the language, if you look at the context, and if you think about what Congress was attempting to, was dealing with in terms of the litigation rights, it makes no sense to read the first sentence as suggesting that Congress wanted to recreate the very result that it sought to overrule in Vacheron. Alito, you alluded to major problems and then didn't describe them. It seems to me you're trying to create enough doubt about the statutory language to suggest we shouldn't stick with the reading that Justice Kagan asked about. And the doubt you're trying to sow is created because you say it would make no sense and there would be major problems. What can you describe what those are? Sure. In it, and I think that the amici speak to this, is that the most significant problem is that when there is infringement that begins, and the claim has not yet been registered, that the copyright owner cannot bring any civil action, including an action for injunctive relief, until the Copyright Office has acted, and under the view of the Respondent and the government, until the Copyright Office has either granted or refused registration. All right. What happens in a case where you do bring, and I'm going to ask the government about the pre-registration intent, which permits a pre-registration injunction. What does a court do? Let's assume that the registration hasn't been made. There's an injunctive suit before that. Does the court just automatically grant the injunction? Does it wait for the registration? Does it have a hearing on who's right about the copyright? What occurs? And what would happen if the court grants the injunction and the registrar refuses registration? Well, Your Honor, are you talking about in a situation in which they are free? Your reading is given effect. Your reading is given effect. Copyright owner comes in, says I want an injunction. The Copyright Office hasn't acted yet. What does the court do? As in any other civil action, the plaintiff would have the obligation to provide prima facie evidence to carry the burden to show that they are entitled to relief. That would include showing at the, you know, at the TRO or preliminary injunction stage that they have complied with Section 408A, and thus that. Sotomayor, let's assume they have. What do they do about the registrar not acting? Can final judgment be entered before the registrar acts? Certainly. Section 410D provides for that. It says that the, you know, it would depend on the context, but yes, in a circumstance in which they are not talking about any more preliminary injunction, but some final judgment, the court could certainly enter a judgment under Section 410D. And what happens if the registrar refuses after the judgment is entered? Well, in any case in which there's a – in any civil suit, the registrar will receive notice of the suit, and the suit can be, you know, the registrar could either expedite examination of the application or could potentially. But if judgment is entered. Yes. And the registrar refuses, it's sort of a moot question to be told that the suit has already started, isn't it? Because 411. Again, they have to be notified within 30 days of the filing of the suit. I think it's very unlikely there would be a final judgment before that. But the point is that under Section 508 of the statute, Your Honor, they have – the registrar is entitled to be notified within 30 days. But the point is that I think that these are really questions that just don't arise as a practical matter. If there were a situation in which there was genuinely a doubt about the registrability of the claim, if the court wanted to do so, the district court can manage the litigation to get the views of the registrar. And, you know, there's something similar, actually, Your Honor, in Section 411B, which talks about the consequences of incorrect information in a certificate of registration. If there's incorrect information in a certificate of registration, it doesn't matter. The litigation proceeds, unless there's a claim that the registration would not have issued at all. And then the registrar may be called upon to give their views. That happens approximately never. It happened in three cases out of 3,500 in 2017. The registrar never intervened in a case in 2017, as far as we were able to determine in a copyright infringement action. It's important to understand the practicalities of this. This is not patent litigation. This is not a suit. This is not a case. What are the practical problems? I think the message of your argument is, if you really understood how this works in the real world, we would agree with your reading, and you're saying practical problems. I want to hear the practical problems. The practical problems are those that are described in our briefs and in the briefs of the amici, which are the major problems. What are the most severe practical problems? Delay, I understand. I think the most severe practical problem is the inability to receive prompt injunctive relief in a circumstance where the claim has not yet been made. And that's a problem because, just spell it out. Sure. Because the value of the copyright depends on the ability to exclude from, exclude the unauthorized copying, unauthorized reproduction of the work. And in that period of delay, what may happen? In that period, thank you, Your Honor. In that period of delay, it could be distributed over the Internet. In the case of a song, for example, you know, it could be very widely distributed over the Internet. In the case of even an article, and this is discussed in some of the amicus briefs, that within days, an article can be so widely disseminated that its value for the author has been lost. And that's too good. And are damages never going to be sufficient to compensate for that, and why would that be? Well, for many, in many cases, it may be impossible to identify who has done all of the subsequent, subsequent distribution. I mean, the point is that Congress authorized injunctive remedies precisely because it may often be difficult to determine what the damages are. And it does not, it does not make sense, once the copyright owner has complied with the registration obligation under Section 408A, to prevent that, the copyright owner, from pursuing the remedy. Everybody agrees that the ---- Kagan. How long are the delays now, and how does that compare with what the delays were when this Act was passed? The ---- my understanding is that for electronic submissions, the average is 7 months, and for paper, it's 9. You can pay extra for first class, right? You can, Your Honor. You can pay extra to have expedited consideration. But first of all, the Copyright Office is under no obligation to grant that. Second of all, even in those circumstances, it can take many weeks, even months, to resolve the application. And that's enough time, especially in, you know, under current circumstances, for a work to be essentially rendered valueless because of its broad distribution value. And when the Act was passed, what were the delays then? They appear to have been significantly shorter, Your Honor. I didn't see ---- I couldn't determine exactly what they were in terms of averages, but they were significantly shorter. Yeah, I mean, significantly shorter, but still a matter of weeks and months? I think a matter of weeks in any event. But there was some suggestion that at an earlier time, it was quite fast. The Washingtonian case, which is back in the 30s, but I happen to notice that in that one, the application, the case was evidently filed after a certificate had been granted, and that was two weeks after the application was submitted. So it may be that, you know, but what's interesting is in Chief Judge Clark's dissent in Vacheron, he does talk about the fact that delay could lead to the loss of substantive rights and that that doesn't make any sense. I do think that Congress was influenced by that dissent, or I think it makes sense to read Congress's enactment as being consistent with the views expressed in that that once the copyright owner has complied with the obligations under Section 408A, it does not make sense to prevent the copyright owner from pursuing a remedy. May I reserve the remainder of my time? Thank you, counsel. Mr. Stris. Thank you, Mr. Chief Justice, and may it please the Court. Section 411 of the Copyright Act provides that no civil infringement suit shall be instituted until registration has been made or registration has been refused. The statutory text is plain. The registrar of copyrights must make a registration determination before an applicant can sue for infringement. And I'd like to start with the operative sentence of Section 411A. This is on page 30A of the Petition Appendix. And that sentence prohibits suit, quote, until preregistration or registration of the copyright claim has been made in accordance with this title. So the natural question is where in this title do we look? The immediately preceding provision in the title happens to be called registration of claim. This is Section 410. It's on page 29A of the Petition Appendix. The A subsection says that after the registrar examines the claim, if the criteria is met, quote, the registrar shall register the claim. And the B section says that if the registrar determines the criteria is not met, quote, the registrar shall refuse registration. So in either case, it's patently obvious that it is the registrar who is acting. Well, but I mean, your friend on the other side makes the point, and I think there's a lot to it, that there are a lot of other sections and provisions where it only makes sense to read it, register, as if you were registering for, you know, for the draft or something. So a few responses, Mr. Chief Justice. The first is I'm happy to do a close reading of any of the provisions that my friend cites. We don't actually think any of them stand for the proposition that an application alone is enough. But even if some did, Section 411a is surely not one of them. This is kind of the point you made earlier, Justice Kagan. We look to how it's used in 411a. I don't deny that the word registration, fake registration, in some context could refer to something different. But my friend's core proposition in this case is that there's something special about the use of made or the passive construct. And that's fundamentally what we disagree with. Breyer. What about 410d? 410d, it says, So maybe the registration is when it's received, if there's later approval. So, Justice Breyer, let me give a textual response and then a more fundamental one. My textual response is that the effective date provision requires a determination by someone. This is what the Chief Justice, Mr. Chief Justice, I believe you were getting it earlier. If you look at the text of 410d, it says after the register or a court of competent jurisdiction has determined that the criteria is satisfied, then you get the effective date. 411a, Justice Breyer, is a precondition to suit. No one disputes that. And at the time of filing, no one, neither the registrar. Breyer. It says registration. But, you see, if you look at 410d, I guess in English, if you ever read like property law, there's such a thing as having a piece of property subject to defeasance. And so noting that, and it is a piece of property, you could read 410d as saying the effective date of copyright registration, i.e., you have it. Is the date on which all those things are received, though they are subject to later defeasance if, in fact, the registrar disapproves. Okay. That's consistent with the language, I think, is it? I don't think so. So I'm going to continue with the textual point, and I do want to get to the more fundamental one. The reason why I don't think it's consistent with the language is 411a says that you can't do anything until registration is made. Now, I understand you're trying to have 410d do the work. And I think probably the best phrase in that for my friend is the inclusion of a court of competent jurisdiction. But it's clear that a court of competent jurisdiction is in there because the court can act when the registrar has refused the registration. And, in fact, for those who have a particular view of legislative history, if you look at the House report, it specifically says that. It says that 410d, quote, also recognizes the possibility that a court might later find the registrar wrong in refusing registration. So I think the text doesn't – it would do great violence to the text to interpret it that way. But, Justice Breyer, I want to make the more fundamental point, because this addresses some of the policy issues, kind of the elephant in the room. The whole point of a registration decision, whether it's a grant or a refusal, we submit, is a belief that there's value to the registration process itself. In some ways, it's analogous to administrative exhaustion requirements that we find in a number of statutes. So if you look at copyright specifically, 30 percent of all copyright registration applications result in correspondence. And this is essential, because occasionally it's correspondence, like in this case, where you get a letter saying, your check bounced, please pay the money. But far more often, the correspondence is the agency saying, well, we looked at your application, we need you to change things, we need you to limit your claim. It's an interactive process. And so my friend wants to focus entirely on the fact that most of the applications are ultimately granted. I mean, not just most, 97 percent, right? So I think it's maybe even more than that. But I want to press, before I get to that, I want to press this point. Many of those applications are granted after changes have been made by the applicants because of the interaction. Kagan. How often does that happen? I don't know as a percentage, but I can tell you not a de minimis amount, a significant number of times. And so you may not like this policy, but what I'm trying to do is not argue as a policy matter that I'm right. I'm trying to explain why there's no — you shouldn't have any heartburn holding that Congress meant what it clearly said in the provision, because one could certainly believe that it's more efficient. Well, maybe the bigger heartburn, if we have any, about the policy here is that — I'm persuaded of one thing. It's that Congress pretty much assumed that registration decisions would happen promptly when it enacted the statute, and that there's at least some evidence that that hope or expectation has not exactly materialized. And I take that to be the underlying plea from the other side, really. What do you say to that? So I would say a few things. First I would say that, to be perfectly frank, this is largely a solution in search of a problem. And I want to address the injunctive issue first and then come back to damages. With regard to injunctions, I don't think it's — I don't think I can overstate the point that this argument has been made to Congress repeatedly. And Congress has added two critical exceptions where the need for an ex parte TRO is most acute. And I'm talking about the live broadcast exception in 411C, and I'm talking about preregistration in 408F. And so in the mine run of cases where there's an issue with regard to needing an injunction quickly, those address the problem. Solution undermines that solution. Your proposed reading means that the people who are preregistering are not getting the benefit of it until the registrar acts. No, no. Justice Sotomayor, that's a very important point. If you look at 411A, it says you can't bring suit until preregistration or registration of the claim has been made. All right. But the preregistration has to be accepted, no? Of course. And the way preregistration — And so isn't preregistration being accepted slowly as well? No, no, no, no. Preregistration is an entirely different process. You can preregister a work that isn't even finished. You don't have to deposit the work. You just have to describe it and explain to the office why it falls within a category of works that have historically been infringed before first commercialization. So if you're HBO and you have Game of Thrones and you're working on it and you know a lot of people, the people on the set, the key grips, they're going to have access to the materials, you have a streamlined application that you file with the office and all you have to do is explain that it fits within the regulatory definition, you get preregistration. You can sue immediately. You can get an injunction. And this is critical. If you look at 408F3, Congress said you then must submit an application, deposit and fee within three months of your first commercialization. So it just goes to show that Congress knew how to make clear that they wanted to peg something to an application. Now, Justice Gorsuch, back to my solution in search of a problem. So the first answer is I think there are these two critical exceptions that deal with the problem quite well. My second answer is that in the rare case, and I think frankly it is rare, where you would have the imminence and irreparable injury that would warrant a TRO and you don't fall within one of those exceptions, you can apply for special handling. And I understand that special handling was not required. It's something that the office has decided to offer. But as a practical matter, the reality is it is offered. And the office does everything it can to resolve issues within five days. And obviously you can ask my friend from the government about more detail about how it works, but my understanding is that they honor that, and that particularly if you notify the government that there's litigation, there's no reason to believe that you don't get a determination within a certain number of days. So I really think it's not an issue. And then I would conclude by saying to the extent that some hypothetical copyright plaintiff with a pending application can't get a TRO for, like, doesn't fit within one of those two things, our core submission is that that's a cost that Congress thought was worth the benefits of the specific rule that they chose. Now, with regard to damages, just a few words on this. The statute of limitations in Section 507B, it's a three-year rolling statute that runs from discovery of infringement. Now, I think it was Justice Kagan who asked a question about the processing times. As of now, according to the Copyright Office website, the average processing time for all claims is seven months. Ninety-four percent of all applications right now are resolved within two to 15 months. So I think the most telling answer as a practical matter that I would give is that it's not surprising that the Petitioner does not identify a single case where the statute of limitations has somehow expired while an applicant was waiting. Well, as you said, it's a rolling statute, Administrator, so the idea of it expiring doesn't really fit. And the argument, I guess, on the other side is that seven months doesn't mean that much if it's the first two weeks where all the damage is done, because somebody puts it online and then everybody's, you know, has the benefit of it, and it's very hard to go back and undo that. So two responses. So with regard to irreparable injury, I think that's what injunctions are for, and I feel like I addressed that a bit earlier. With regard to damages and your point, which I take, that it's rolling and there are separate accruals, and we're not just talking about whether you lose your entire claim, but whether you lose some of the damages, I'm making a much stronger point. I'm saying Petitioner doesn't cite a single case where some chunk of the damages fell outside of the three-year window because the applicant was waiting. The only other thing is that the statute of limitations has expired while an applicant was waiting. Roberts. Well, I don't know, you know, whether he cites a particular case or not, but as a matter of logic, it makes sense, doesn't it? I don't think so. And let me kind of walk through why I don't think it makes sense. So you have three years from discovery, three years from, oh, okay, I see that there's an infringement, I have three years to wait. If you're not being dilatory, you immediately file your application. Three years you need. If the average processing time is seven months, and if 94 percent of applications are being resolved within 15 months on the outside, you're talking about a tiny percentage of situations that even come close. If you look at those, they tend to be mail applications, which the office discourages, that involve correspondence, where if there's any way to get from 15 months to three years, it's overwhelmingly likely that it's because of dilatory behavior on the part of the applicant. And let me give you a warrant for that. The only case that we have ever seen where this has been an issue was found by the American Bar Association, an amici to my friend, who cites a 25-year-old case called Kregos from the Southern District of New York. Well, the Court described the problem as, quote, self-induced, because, in fact, the plaintiff sat on his hands. So I can't come here and tell you that there's never been a situation where this has been an issue, but I think the fact that, you know, my friend and a host of amici haven't been able to unearth one of them is probably strong indication that this is not that serious a problem. You have a good argument on the text, obviously, but you're also trying to say there's no real problem here, a solution in search of a problem. I'm just questioning that, given the amici say things like the rule adopted here would have a devastating impact and would cause severe hardship, and these are the industry representatives. Again, you could win on the text, but the idea that there's no problem seems a stretch to me. Well, so, Justice Kavanaugh, let me address that head-on. So I will concede that, for decades, there's been vigorous disagreement over whether and to what extent formalities should be removed from the Copyright Act, and many stakeholders, including several of Petitioner's amici, have long been dissatisfied. They prefer... Right. There's a problem. But, so, let me finish. Okay. There are many people who subscribe to that view. Whether you characterize it as a problem is kind of a normative judgment. There are also many people who subscribe to the alternative view. We happen to be among them. Our amici happen to be among them. So I would resist the characterization of your question and say that there's not ambiguity in the statute, but rather a profound dissatisfaction on the part of some stakeholders, and the way we address that is we look at the text and we try and determine what it indicates Congress decided. Okay. And on this one, I don't think just we have an okay argument on the text. I think that it's overwhelmingly the case that you have to interpret it to mean a registration decision. So going back to the text just for a moment, I've only talked about the first sentence, which I think... Before we leave that subject, I'm sorry. I'm sorry to interrupt. Please. But what do you say to the objection that it puts American copyright holders at a disadvantage because formalities aren't required under our international obligations? So, Justice Gorsuch, what you just asked was the core debate, and it was a vigorous one in 1988 when the House and the Senate split in determining how to deal with Byrne. One said, okay, we should get rid of the registration requirement entirely. The other said, no, it's fine, keep it the way it is. They reached a compromise, and they added the words U.S. works. So again, I certainly don't want to suggest that the policy arguments for the alternative are terrible. They could be defended. Many people in this room may think that they're right, but they're beside the point when the case is about what Congress meant in enacting this particular statutory language. You made an analogy to exhaustion of administrative remedies. I just want to test that analogy. Is that really what's going on here? Is this resolving it going to eliminate the need for a suit? So I think it's a... I use the word analogy on purpose. It's not exactly the same, but there are some striking... Is it even within the zip code? Definitely. Definitely. Okay. How? I think there are striking similarities. So the first is, although as a percentage most claims, 97 percent, 99 percent, ultimately get registered, last year there were 18,000 refuses. And that doesn't take into account the tens of thousands of applications that were abandoned or withdrawn in the process. So it may be a small percentage, but there are still tens of thousands of instances where you would have different incentives and different conduct based upon the rule that you pick. That's number one. Number two, even for the claims that are granted, you can't sweep away the fact that there is interaction between the applicant and the office. And so whether you allow people to sue immediately or whether you require that they go through the examination process irrespective of the result, clearly is similar to an exhaustion regime in that you think that there's something beneficial about the process. And then my final answer is, I think perhaps the most important one, which is the reason it's a loose analog, the reason why it's in the same ballpark is it may not be like ERISA, for example, where the point of the administrative process is to see if you can resolve the dispute beforehand. But it is similar in the sense that you believe that a completion of the process has value. And I think the authors and educators, Amicus Brief does a great job of describing that requiring that people go through the process enhances copyright value. It creates a public registry of publicly available information about the correspondence. It ensures that the claims that are being registered are the best claims possible. It has the incentive that people act earlier and register claims or rather apply to infringement, but get works into the Library of Congress and into the registry because they think, well, I want to get ahead of the game and be in a position where I can vindicate my rights. That's not exactly the same as an administrative exhaustion requirement before litigation, but it's certainly in the same zip code. There's a number of, I think, very strong parallels. So I guess the final thing that I would say is that I've only talked briefly about the first sentence, but if you turn to the second sentence of Section 411a, I think it really kind of seals the deal, because that sentence is naturally read as an exception to the first. And in order to avoid that reading, my friend is forced to argue that exactly the same phrase, registration has been, means two completely different things in the first and the second sentence. And kind of in the interest of kind of not burying the lead, what I would say about this is that the problem, if I could just finish my thought, the problem with what my friend does infects many of his arguments, which is he interprets the provision in a way that's not literally impossible, but renders many provisions insignificant. 410d, 408f, the constructive notice provisions. It just doesn't make sense to do that, and so we ask that you affirm. Thank you, Counsel. Mr. Ellis. Mr. Chief Justice, and may it please the Court. I'd like to pick up right where my friend left off on the second sentence of Section 411a, because I do think that that is really the key to this case, and I think there are three pretty ‑‑ three textual cues in that sentence that show that registration has been made in the first sentence must be referring to the act of the register. The first is the one we just talked about, that it uses the word registration. I think it's actually a little bit stronger than what we've said. It says registration has been refused. That obviously is talking about the final act of registration. That's the only ‑‑ that's what has been refused in that scenario. So it's pretty strange to just think that the registration, that word in the first sentence, doesn't mean the same thing, and the only person who can make registration in that sense is the registrar of copyrights. The second thing to notice is that the second sentence says that when you ‑‑ refers to delivering to the copyright office your deposit, application, and fee in proper form. You might recognize that sentence. That's what my friend says registration has been made means in the first. Again, pretty peculiar for Congress to refer to the exact same conduct in two consecutive sentences and not use a phrase that even resembles each other. And the third thing is what my friend says, has already raised, that the whole point of the second sentence is to create an exception to the registration requirement in the first. And you don't need an exception to the registration requirement when the copyright registrar has refused registration. If all you had to do was submit your application in proper form, what the registrar does in errantly, is the assumption in that sentence, doesn't change that you've properly applied. Well, I believe ‑‑ Go ahead. I believe Mr. Panner says that the function of the second sentence is to require an additional act that notice be given to the register. Right. And I think there are two problems with that reading, aside from the fact it's just not the most natural one. The first is that I think what he said this morning is that you can ‑‑ the case can still proceed when ‑‑ after the register refuses registration, but that's not what it says. It says you're entitled to institute your suit. So it assumes that nothing happens until the register has acted. That makes sense. The other problem with the second sentence is that it undermines the third sentence of 411A, which gives the registrar a right to intervene in suits in where she has refused registration upon notice within 60 days. And if a suit can be filed before the registrar gets a chance to evaluate the application and come to a decision and then get notice of this suit, then the suit can get pretty far down the road before the registrar can intervene, and I think that undermines the scheme and is clearly not what Congress intended. The petitioner talks about ‑‑ points to obviously a bunch of different provisions in the Act, and he says, well, registration has been made or some variant of that, and these other provisions must mean the copyright owner's actions. We disagree, but we don't think the Court has to go that far. I think it's clear, and he agrees, that it doesn't always mean that in the Act. Section 708A refers to ‑‑ says that the fees you pay for an application have to cover the cost of the application, including the issuance of a certificate if registration is made. Well, the issue ‑‑ a certificate is only issued if registration is made by the registrar. In the constructive notice provisions in section 60 ‑‑ or, excuse me, 205 and in 406, I think those are also places where he disagrees, but I don't think there's any reasonable reading of those provisions that can come to the conclusion that registration has been made there, or a variant thereof, doesn't refer to the Register of Copyrights Act. And if I could maybe walk through why that is, I think it's important. 205, section 205, is about recording documents that relate to a copyrighted work. So think about a transfer of ownership. And it says you can record the document, and once you do, the world is on notice of the facts stated therein, with two conditions. The first is that that document contain enough information such that a search in the Copyright Office's records by registration number or by title reveals the document. The second is that registration has been made. And I think the obvious implication there is that that, too, is going to create a public record of the work and of the registration of the work, and that's not true of an application. And so it's true that the right attaches right away, but as you were talking about before, Justice Sotomayor, there are circumstances where notice is critically important. This is one of them. And petitioner's reading would make a hash of that provision. Section 406 is a similar one, and where it says if there's an error in the notice on a copyrighted work, so, you know, it says your Circle C, and then it says John, well, John's not the owner. It turns out that Jack is. That says that doesn't invalidate your copyright. But what it does do is provide an infringer, an innocent infringer, with a complete defense to infringement if he went out and got a license from John, the person who was named in that notice. But, critically, you can't rely on that defense. The innocent infringer defense doesn't work if registration had been made in the correct owner's name at the time of infringement. Again, that makes no sense unless registration having been made creates a public record of the work and the proper owner. So I think what that establishes is that it cannot mean everywhere it shows up to refer to the act of the copyright owner. And so it just points us right back to Section 411A and the first two sentences, which we think cannot be read any other way. The textual argument you make is, of course, weighty. I think they're trying to say that there are — it doesn't make sense in terms of, A, what Congress would have been thinking, or, B, and B, how things operate in the real world and the problems that would be created. So can you respond to those? I'd love to address both. On the first, I think it's what Congress could have thought. It may be hard-hearted to say, but as we discussed, the delays at the time of — the time the suit was passed or the act was passed weren't so great. So I think that sort of cuts against thinking that Congress couldn't have wanted this. As to the problems, I think they're overstated. Let me start by saying first, though, that the Copyright Office also desires efficient and quick registration. In the last three years, the Copyright Office has sought and received appropriations to increase their examination staff by about 60 percent. As those people are trained and get into the workforce, I think we're going to see, and we're already seeing — You're not denying there are delays, and the delays are a problem? I'm not denying there are delays, and I'm not denying that there is dissatisfaction with delays. Yes. The word problem, I won't use. I think that the second thing you might look at is what Congress has done in response to those concerns. We've already talked about two of those things, the preregistration regime, which the delay is not the same. For that, all you're submitting is an abbreviated description of the work. You don't have to do the examination of the deposit, et cetera. The second is the live broadcast. The third hasn't been mentioned this morning, and it's actually not mentioned in the brief, so I think it's worth pointing out. There are a lot of hypotheticals about what about this online proliferation of my work, and what do I do? Well, Section 512 of the Copyright Act discusses secondary liability for online service providers, and it provides immunity in certain circumstances. One of those requirements is that you have a takedown regime, such that if — think about YouTube or something like this — if a copywriter comes to you and says, there's a work on your site that's infringing my copyrights, you have to take it down. And that's not — does not determine whether the work is registered or not. Excuse me. So I think what we — what that shows is that Congress is receptive to these dissatisfactions. It has weighed in multiple times, at the same time trying to balance these concerns against the real benefits of registration and the real benefits of having the Copyright Office participate in this examination, and then have the right to participate and provide their views to the Court. Roberts. I understand your textual argument about the incongruity of the same phrase, having two different meanings in 411. But it's not that much more compelling than your friend's argument, listing all the other sections where it has — your reading would require it to mean different things as well. So, again, we don't think that's actually true, but I don't want to get into a debate about — unless you'd like to — about ten other provisions of the Act. I think it's enough to say that he admits that 708 uses it in that way, uses registration has been made to refer to the act of the copyright owner — excuse me, the act of the registrar. Now, he says you shouldn't put any weight on that because it wasn't in the 76 Act, but this Court tries to make sense of a statutory scheme as a whole. And then there's the constructive notice provisions that I tried to walk the Court through, where it just can't make sense there to refer to it. And so we're back to saying, well, what makes sense for this provision? And I think because what makes sense for this provision, for a host of reasons, is that — is that registration has been made in the first sentence, is using the word register in the same way that everybody agrees registration is being used in the second sentence. Just to say a word about these cases that the other side points to, Vacheron, and I think in the brief they cited a couple others that they didn't do this morning. You know, you can look at those decisions for yourselves and decide what the debate was, but if you want to sort of get behind the text and figure out what Congress was getting after, I don't think you can do a lot better than looking at the legislative record itself. And I would point you first to the 1961 report by the Copyright Office to Congress that addresses this very question and Vacheron and what should be done about it. And what the Copyright Office said is that registration is important. You should maintain that requirement with one modification. You should address the situation in Vacheron where after the Copyright Office, the register has refused registration, the copyright owner has to file two suits, a mandamus suit against the register to issue a certification, and second, your infringement action. What you should do in that case is to combine those suits. That's what the second and third senates of 411A does. Then when you look at the first act introduced into the House, 1964, written by the Copyright Office, unsurprisingly adopts the recommendation. When you look at the 1976 act, it doesn't change, by the way, between 1964 and an act in 1976, then you look at the House report at page 157 and it confirms. Roberts. Thank you, counsel. Mr. Panner, you have five minutes remaining. Thank you, Mr. Chief Justice. I want to emphasize that our argument relies primarily on the text of section 411A and the fact that it uses the phrase, registration has been made, and that in the act, that phrase and that construction consistently refers to the action of the copyright owner. It's revealing that in the legislative history, which is included in the codification of the act, it says that a copyright owner who has not registered his claim can have a valid cause of action against someone who has infringed his copyright, but he cannot enforce his rights in the courts until he has made registration. That is, and again, in section 411B of the 1976 act, now 411C, the copyright owner makes registration.  I want to emphasize in statute that when Congress was referring to the action of the copyright owner, it used that phraseology. And I want to, you know, section 708A, as the government has acknowledged, was adopted in 1982. It has nothing to do with litigation rights and remedies, and therefore really says nothing about how the provision should be properly construed in section 411A. And the constructive notice provisions, there is actually a constructive notice provision that talks about actual notice, but the other constructive notice provisions quite sensibly protect the copyright owner if the copyright owner has done what the copyright owner is required to do to register the claim, namely submit the required application, application deposit and fee. And recall that as if the time of examination was quite short at the time of the adoption of the act, that was unlikely to prejudice anyone because registration would come through quickly. And, you know, so it makes perfect sense that in the same way that that is sufficient to protect the rights, to protect the remedies available to the copyright owner, that it is also appropriate to open the court, the gates of the courthouse. It's surprising to me that the government relies so heavily, by the way, on those constructive notice provisions, because copyright publication with notice is no longer required under the act. So this is all an issue that would have gone away in 1988 with regard to the notice. But the key point is that it makes sense to protect copyright owners and to give them their rights and remedies. And that's what the — upon compliance with Section 408A, the submission of the required application, deposit and fee, and that's what the statute says. That is what the text says. And I think it's also important to read that in light of the history. And the key issue that was debated between the majority opinion and the dissent in Vacheron is whether the copyright owner should be prevented from gaining access to the copyright office because the copyright office had not yet acted or granted the registration. Now, it's true that in that case, there had been a refusal, and the question was whether mandamus was required. But the same consequences occur in the case of copyright office inaction. If there's a circumstance where the copyright office does not act, the question is, can you go to court? And it's inconceivable that Congress would have said, in the case of refusal, you can go to court. You don't need to seek a judicial remedy. But in the case of inaction, you can't go to court, and you have to somehow seek a mandamus to get a decision before going to court. It makes all the sense in the world to understand that language to say what it clearly says within the phraseology of the Act, that if the copyright owner has made registration under Section 408A, that the copyright owner is then entitled to sue. And the conceit that Congress intended to require administrative exhaustion or was concerned about copyright quality, that is no basis for that in the text of the statute. There's no basis for it in the history of the of what Congress said, what the committee report said about the Act, for what that's worth. The key point is that the registration requirement has its purpose, and that purpose is vindicated if the copyright owner has submitted the required application, deposit, and fee as Section 408 requires. Roberts. Thank you, counsel. The case is submitted.